UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK A. HASTINGS, an individual,<br><br>          Plaintiff,<br><br>v.<br><br>THOMAS J. HASTINGS, individually and as trustee of the Doris E. Cosgrove Trust, et al.,<br><br>          Defendant. | Case No.:  15-cv-1578-H-(KSC)<br><br>**REPORT AND RECOMMENDATION DENYING MOTION TO ENFORCE SETTLEMENT**<br><br>**[Doc. Nos. 39, 40]** |

  Presently before the Court is the parties' Joint Motion to Enforce Settlement filed on August 26, 2016. [Doc. No. 39.]  Plaintiff seeks an Order from the Court determining the obligation of defendant to pay taxes refunded to defendant pursuant to a Settlement Agreement entered into between the parties.  Defendant seeks an Order from the Court denying the Motion to Enforce Settlement because he asserts that plaintiff is not owed any tax refund. The Motion was referred to this Court for report and recommendation, pursuant to Title 28 U.S.C. 636(b)(1)(B), by the Honorable Marilyn L. Huff.  For the reasons addressed more thoroughly below, **IT IS HEREBY RECOMMENDED** that the District Court **DENY** the Motion to Enforce the Settlement. [Doc. No. 39.]

/ / /

/ / /

1

15-cv-1578-H-(KSC)

# BACKGROUND

On July 16, 2015, plaintiff filed suit against defendant, his brother, alleging that defendant breached his fiduciary duties and engaged in other wrongdoing as trustee of their mother's trust, the Doris E. Cosgrove Trust. [Doc. No. 1.] The sole asset of the trust was real property in Julian, California ("Julian Property"). [Doc. No. 39, pp. 3, 11.] Under the terms of the Trust, the Julian Property was gifted to plaintiff and defendant, 50% each. [Doc. No. 39, pp. 3, 11.] On or about January 8, 2015, the Julian Property was sold. [Doc. No. 39, p. 3.] At the time of the sale of the Julian Property, $21,645.00 was withheld in escrow for tax liability due to the California Franchise Tax Board ("FTB"). [Doc. No. 39, p. 3; Doc. No. 39-1, Ex. 1, pp. 9-13.]

On December 7, 2015, plaintiff and defendant settled the case at an Early Neutral Evaluation ("ENE") conference held before Magistrate Judge Karen S. Crawford. [Doc. No. 22, at p. 2.] At the conference, the parties agreed among other things that defendant would pay plaintiff $235,000.00, but that $30,000.00 would be set aside to cover taxes due and one-half of the costs associated with preparing the filing of a tax return for the trust for the year 2015. [Doc. No. 22, at p. 2.]

On January 25, 2016, the parties entered into a written Settlement Agreement [Doc. No. 39-2; Ex. 2, pp. 7-12.] Under the terms of the Settlement Agreement[1], the parties agreed in relevant part as follows:

> 2d.  Thirty Thousand and 00/100 Dollars ($30,000.00) shall be withheld ("Reserved Funds") for the payment of Jack's [Plaintiff] fifty percent (50%) share of any federal, county or state taxes associated with the sale of the Julian Property, including Jack's 50% proportional share of all costs for the preparation of said tax returns (collectively, the "Taxes");
>
> 2e.  In the event Jack's fifty percent (50%) share of the

---

[1] To support their respective positions, the parties submitted a redacted version of the written Settlement Agreement (Section 1(a)-(c)) to the Court. [Doc. No. 39-2; Ex. 2.] In reaching a decision on the parties' dispute, the Court has relied on the redacted version of the Agreement provided.

> Taxes is less than the amount of the Reserved Funds, Thomas [Defendant] shall pay to Jack the difference between the Reserved Funds and the actual Taxes due as set forth on the tax returns (and 50% of preparation expenses), within forty-five (45) days of the filing of the tax returns. Within forty-five (45) days of the filing of the Trust's tax returns, Thomas will provide Jack with copies of the Trust's tax returns and all invoices reflecting accounting, legal and tax preparation expenses incurred in the preparation of said tax returns;
>
> 2f.   To the extent that the California Franchise Tax Board refunds any portion of the funds held at the close of escrow for the Julian Property ($21,645.00), Thomas shall pay to Jack fifty percent (50%) of any refund within five (5) business days of receipt of said funds, with documentation of said refund to be sent to counsel for Jack contemporaneously with the payment. . .
>
> 13.   <u>No Oral Modifications</u>:   This Agreement may not be modified or amended except by written instrument, signed by each of the Parties hereto, expressing such an amendment for modification.

[Doc. No. 39-2; Ex. 2, pp. 8, 11.]

On February 23, 2016, the parties filed a Joint Motion to Dismiss this case with prejudice. [Doc. No. 35.]  According to the Notice, the parties agreed that the Court would retain jurisdiction to enforce their settlement. [Doc. No. 35, p. 2.] On February 24, 2016, this Court entered the Order Dismissing the Case with Prejudice, which retained jurisdiction to enforce the settlement. [Doc. No. 36.]

**1.  Current Dispute**

Defendant trustee completed the tax filings and work for the Trust in late-May 2016. [Doc. No. 39, p. 13.] On June 2, 2016, defendant provided plaintiff with copies of all of the relevant tax documents and an accounting of the taxes. [Doc. No. 39, pp. 4, 13.] Between June 2, 2016 and June 27, 2016, the parties, through their counsel, exchanged emails regarding their disagreement about the accounting of the parties' respective tax

liability. [Doc. No. 39, pp. 4-7, 13-17, 26-38.]

Plaintiff contends that defendant is improperly withholding $8,381.00 from plaintiff. [Doc. No. 39, p. 7.] Plaintiff argues that defendant owes him this sum because plaintiff's share of the tax liability is less than the $30,000.00 withheld by defendant pursuant to the Settlement Agreement. [Doc. No. 39, p. 7.] It is plaintiff's position that defendant is "attempting to add in a payment of $21,645.00 as a liability, when in fact that was a payment from the escrow for the sale of the subject property." [Doc. No. 39, p. 6.] Plaintiff relies on Paragraph 2(f) in the Settlement Agreement to support his argument that he is entitled to half of the refund from the FTB. [Doc. No. 39, p. 4.]

Plaintiff asserts that the correct accounting of taxes is as follows:

| **Item** | **Total Paid** | **Plaintiff's Share** |
|---|---|---|
| Federal Tax Liability: | $46,277.00 | $23,138.50 |
| IRS Supplemental Notice of Unpaid Balance: | $277.00 | $138.50 |
| Tax Preparation Bill: | $2,400.00 | $1,200.00 |
| CA FTB Refund Due (still pending): | -$5,716.00 | $2,858.00 |
| **Total Liability:** | **$43,238.00** | **$21,619.00** |

[Doc. No. 39, p. 7.] Plaintiff contends that his share of tax liability for 2015/2016 ($21,619.00) should be subtracted from the $30,000.00 withheld by defendant requiring defendant to pay him $8,381.00. [Doc. No. 39, p. 7.] Plaintiff's position is that the $21,645.00 FTB tax was paid from escrow when the Julian Property sold on January 8, 2015, so it should be treated differently from other taxes due on the property, and not considered for purposes of determining taxes paid pursuant to Paragraph 2(d) of the Settlement Agreement. [Doc. No. 39, p. 7.]

Defendant contends that he owes no tax refund to plaintiff. [Doc. No. 39, at p. 14.] Defendant's position is that the total tax liability for 2015/2016 exceeded the $30,000.00 reserve provided for in the Settlement Agreement. [Doc. No. 39, at p. 14.] Defendant

claims that plaintiff's argument relies on an "out-of-context interpretation of Section 2(f) of the Settlement Agreement." [Doc. No. 39, p. 14.] Defendant's position is that "the intent of the parties under the Settlement Agreement was that taxes — *all taxes* — be borne equally in proportion to their beneficiary interest [50%]." [Doc. No. 39, p. 15.] Defendant argues that "[r]ead in context, it is obvious that Section 2(f) is nothing other than a timing provision. If there is a refund from the California Franchise Tax authority, then Jack [plaintiff] wants it within five days. Nowhere in the Settlement Agreement does it provide that Jack [plaintiff] will be able to ignore his proportional liability for the Cosgrove Trust taxes." [Doc. No. 39, p. 16.]

Defendant asserts that the correct accounting of taxes is as follows:

| **Item** | **Total Paid** | **Plaintiff's Share** |
|---|---|---|
| Federal Tax Liability: | $46,277.00 paid on April 15, 2016 | $23,138.50 |
| IRS Supplemental Notice of Unpaid Balance: | $277.00 paid on May 18, 2016 | $138.50 |
| Tax Preparation Bill: | $2,400.00 paid on April 28, 2016 | $1,200.00 |
| CA FTB Liability: | $21,645.00 paid at closing of Julian Property on January 8, 2015 | $10,822.50 |
| CA FTB Refund Due (still pending): | -$5,716.00 | $2,858.00 |
| **Total Liability:** | **$64,883.00** | **$32,441.50** |

[Doc. No. 39, pp. 13, 27.]  Defendant contends that he paid, as the Trustee, a total of $70,588.00 in taxes in 2015/2016.  [Doc. No. 39, p. 13.] He claims that he learned through the return filing that the escrow overpaid California taxes and thus the Trust will receive a refund of $5,716.00 from the FTB. [Doc. No. 39, p. 13.] Notwithstanding the pending refund from the FTB, defendant argues that he owes no taxes to plaintiff because pursuant to Sections 2(d) and 2(e) of the Settlement Agreement, the total liability for taxes for 2015/2016 exceeded the $30,000 reserve. [Doc. No. 39, p. 14.]

///

### 2. Motion to Enforce Settlement

On August 4, 2016, plaintiff contacted the Court requesting a telephonic status conference to discuss a potential Motion to Enforce the Settlement Agreement regarding the parties' disagreement over the terms of the Settlement Agreement. [Doc. No. 37.] On August 19, 2016, Judge Crawford held a telephonic settlement conference regarding the same. [Doc. No. 38.] The issue was not resolved. [Doc. No. 38.] The parties were directed to file a Joint Motion to Enforce the Settlement. [Doc. No. 38.]

## LEGAL STANDARD

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). To be enforced, the settlement must meet two requirements: (1) it must be a complete agreement, *id*.; and (2) both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute. *Harrop v. Western Airlines, Inc*., 550 F.2d 1143, 1144-45 (9th Cir. 1977). In addition, "[t]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th 1989). Therefore, this Court applies California law regarding the interpretation of the Settlement Agreement at issue.

"Under California law, the intent of the parties determines the meaning of the contract." *United Commercial Ins. Serv., Inc. v. Paymaster Corp*., 962 F.2d 853, 856 (9th Cir. 1992) (citing Cal. Civ. Code §§ 1636, 1638). The proper inquiry is the parties' objective intent, "that is, the intent manifested in the agreement and by surrounding conduct – rather than the subjective beliefs of the parties." *Id*. Therefore, the true intent of a party is irrelevant if it is unexpressed. *Id*.

A settlement agreement "must be interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." *Roden v. Bergen Brunswig Corp*., 107 Cal. App. 4th 620, 625 (2003); *see* Cal. Civ. Code § 1636. When the agreement is in writing, "the intention . . . is to be ascertained from the writing alone, if possible." *Brinton*

*v. Bankers Pension Servs., Inc.* 76 Cal. App. 4th 550, 559 (1999); *see* Cal. Civ. Code § 1639. Further, "[a]lthough the language of the contract must govern its interpretation (Civ. Code, secs. 1638, 1639), nevertheless the meaning is to be obtained from the entire contract and not from any one or more isolated portions thereof." *Lemm v. Stillwater Land & Cattle Co*., 217 Cal. 474, 480 (1933).

### DISCUSSION

Here, it is undisputed that the parties entered into a legally enforceable written Settlement Agreement, executed on January 25, 2016. [Doc. 39-2, Ex. 2, pp. 7-12.] The Settlement Agreement provides in broad terms that the intent of the parties was that all taxes be borne in proportion to their fifty percent beneficiary interest of the Julian Property. [Doc. No. 39-2, Ex. 2, p. 8.] The Agreement explicitly states that plaintiff shall be responsible for fifty percent of the taxes on the Julian Property. [Doc. No. 39-2, Ex. 2, p. 8.] The Settlement Agreement provides in relevant part as follows: "[T]he Parties hereto agree as follows. . . Section 2(d): for the payment of [plaintiff's] fifty percent (50%) share of any federal, county or state taxes. . .; Section 2(e): [Plaintiff's] 50% proportional share of all costs for the preparation of said tax returns. . .; Section 2(e): [Plaintiff's] fifty percent share of the Taxes. . . ." [Doc. No. 39-2, Ex. 2, p. 8.]

The issue before the Court is whether provision 2(f) of the Settlement Agreement, which provides that defendant shall pay plaintiff 50% of any refund from the FTB within five days of receipt said funds, affects the parties' tax liability under the Agreement. Plaintiff contends, he "was informed by his accountant that the $21,645.00 paid to the FTB was likely too high, and that a refund would be due." [Doc. No. 39, p. 4.] "Accordingly, [plaintiff] requested a specific provision in the Settlement Agreement that he would be entitled to half of that refund." [Doc. No. 39, p. 4.] As previously referenced, defendant contends that "[r]ead in context, it is obvious that Section 2(f) is nothing other than a timing provision. If there is a refund from the California Franchise Tax authority, then Jack wants it within five days." [Doc. No. 39, p. 16.]

This Court reads the entire Agreement as a whole, *supra*, *Lemm v. Stillwater Land*

*& Cattle Co.*, 217 Cal. at 480. The underlying premise of the entire Settlement Agreement read as a whole, not just Section 2(f) as an isolated provision, is that the parties intended to share the tax liability (including the cost of tax preparation) for 2015/2016 by 50%. The plain language of the Agreement is that the parties' respective tax liability comes *first*, and *then*, if there is a refund paid to plaintiff, as trustee, defendant will pay half to plaintiff within five business days of receipt. [Doc. No. 39-2, Ex. 2, p. 8.] As indicated in plaintiff's declaration, the parties understood that tax returns would be filed in order to close out the estate. [Doc. No. 39-2, p. 2 at ¶9.] The parties agreed that defendant would hold $30,000.00 of plaintiff's funds to cover 50% share of tax liability going forward and did not anticipate that tax liability and preparation costs would exceed $60,000.00. [Doc. No. 39-2, p. 2 at ¶9.] If the tax liability for 2015/2016 exceeded $30,000.00, then plaintiff would not receive a refund. [Doc. No. 39-2, p. 2 at ¶9.] However, if the tax liability were less than $30,000.00, then defendant would pay to plaintiff the difference between taxes paid and associated filing costs and the $30,000.00 of plaintiff's funds held in reserve by defendant. [Doc. No. 39-2, p. 2 at ¶9.] Read in context, the Court finds that Section 2(f) was intended to cover any subsequent refund by the FTB which was paid after accounting on the reserve was completed. This timing provision was not intended to relieve plaintiff from his 50% share of tax liability.

Plaintiff's argument that defendant seeks to recover $21,645.00 in FTB tax paid from escrow when the Julian Property was sold, and again after the Settlement Agreement when the return was filed, is without merit. [Doc. No. 39, p. 7.] The parties deducted $21,645.00 from the sale price of the Julian Property for taxes due, and a refund of $5,716.00 is still pending from the FTB. Even though the parties deducted the FTB tax from the sale price of the Julian Property, it is still a tax liability that the parties must share equally. The fact that some taxes were paid from an escrow and some were paid after the escrow closed is irrelevant. Plaintiff still owes half of the tax liability under the Agreement.

It is also clear that plaintiff's "objective" intent – "the intent manifested in the agreement and by surrounding conduct" – indicates that he intended to share 50% of the

tax liability up to $30,000.00 per year. *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d at 856. To the extent that plaintiff subjectively intended to avoid part of his tax liability by inserting a provision in the Settlement Agreement about his entitlement to a refund of the FTB tax payment does not override the objective intent manifested in the Agreement.

Indeed, as defendant argues in his briefing, the parties estimated the amount due in taxes and tax preparation, and failed to budget a large enough reserve in the Settlement Agreement. [Doc. No. 39, p. 15.] Defendant paid slightly more ($2,441.50) in taxes for 2015/2016 than plaintiff, but did not thereafter demand any additional money from plaintiff. [Doc. No. 39, pp. 13, 15.] The Settlement Agreement is silent about instances where the parties' liability exceeds the $60,000.0, one half of which was set aside by plaintiff. Thus, there is no basis for defendant to recover from plaintiff the additional amount he paid in taxes in 2015/2016.

Finally, the Settlement Agreement contains a "no oral modifications" provision that the Agreement may not be modified or amended unless in writing. [Doc. No. 39-2, Ex. 2, p. 11.] The parties have not made any such modifications to the Settlement Agreement. Thus, the Court **RECOMMENDS** that plaintiff's Motion to Enforce the Settlement ordering defendant to pay plaintiff taxes in the amount of $8,381.00 be **DENIED**.[2]

## CONCLUSION

Accordingly, the Court **RECOMMENDS** that plaintiff's Motion to Enforce the Settlement [Doc. No. 39] ordering defendant to pay plaintiff taxes is **DENIED**. The Court agrees with the defendant's accounting of taxes as set forth in the chart on page five herein.

---

[2] The history of this case and the briefing at issue underscores the need for litigators to balance zealous advocacy with cost-effective representation. Here, the Court finds that the language of the Settlement Agreement regarding the parties' mutual intention to equally share the tax liability of the Julian Property was clear. Notwithstanding the clear language, counsel for the parties focused more on advocating their respective client's underlying disagreements and desire to "win" at all costs than on counseling their clients to put down their swords and resolve their dispute.

This Court further **RECOMMENDS** that to the extent defendant has not yet paid to plaintiff $235,000.00 from the sale of the Julian Property pursuant to the terms of their settlement, defendant should be ordered to do so within ten days of the District's Court Order.  This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(d).  Within fourteen (14) days after being served with a copy of this Report and Recommendation, "any party may serve and file written objections."  28 U.S.C. § 636(b)(1)(B)&(C).  The document should be captioned "Objections to Report and Recommendation."  The parties are advised that failure to file objections within this specific time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156–57 (9th Cir.1991).

**IT IS SO ORDERED.**

Dated:  October 7, 2016

Hon. Karen S. Crawford
United States Magistrate Judge