UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK A. HASTINGS, an individual,<br><br>                                         Plaintiff,<br><br>v.<br><br>THOMAS J. HASTINGS, individually and as trustee of the Doris E. Cosgrove Trust, et al.,<br><br>                                         Defendant. | Case No.: 3:15-cv-01578-H-KSC<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING PLAINTFF'S MOTION**<br><br>[Doc. Nos. 41, 39] |

On January 26, 2016, the parties executed a settlement agreement (the "Settlement Agreement") and, on February 23, 2016, filed a joint motion to dismiss this case. (Doc. No. 35.) The Court granted the motion to dismiss but retained jurisdiction to enforce the settlement. (Doc. No. 36.) On August 26, 2016, the parties filed a joint motion to enforce the Settlement Agreement. (Doc. No. 39.) The Court referred the motion to the magistrate judge, who filed a Report and Recommendation on October 7, 2016. (Doc. No. 41.) The Report and Recommendation found in favor of the Defendant and recommended denying Plaintiff's motion. (Id.) Plaintiff filed an objection to the Report and Recommendation on October 20, 2016. (Doc. No. 42.) For the following reasons, the Court adopts the Report and Recommendation and denies Plaintiff's motion.

///

**BACKGROUND**

On July 16, 2015, Plaintiff sued to recover his interests in the proceeds of the Julian Property Sale. (Doc. No. 1.) On December 7, 2015, the magistrate judge held an Early Neutral Evaluation Conference ("ENE") that resulted in the parties agreeing to settle the case. (Doc. No. 22.) The magistrate judge summarized the settlement agreement as follows:

> "The monetary settlement will be for the sum of $235,000, with the caveat that $30,000 of that figure will be set aside for the time being to allow for the filing of a tax return for the trust for the year 2015 and any associated costs for the preparation of that trust. It's believed that the tax indebtedness for the sale of the subject property may be in the $50,000 range, plus the estimated preparation cost will be approximately $10,000 which is why we reached the $30,000 set-aside for Mr. Hastings in this matter.
>
> The understanding as well is that there may be offset – some offset in the tax indebtedness based on what was set aside by the California Franchise Tax Board. So there wouldn't be any return separate and apart from what the tax indebtedness might ultimately be determined by the federal and state agencies."

(Doc. No. 22 at 2-3.)

Following the ENE, the parties executed the written Settlement Agreement with the following provisions:

> d.  Thirty Thousand and 00/100 Dollars ($30,000.00) shall be withheld ("Reserved Funds") for the payment of Jack's fifty percent (50%) share of any federal, county or state taxes associated with the sale of the Julian Property, including Jack's 50% proportional share of all costs for the preparation of said tax returns (collectively, the "Taxes");
>
> e.  In the event Jack's fifty percent (50%) share of the Taxes is less than the amount of the Reserved Funds, Thomas shall pay to Jack the

1  difference between the Reserved Funds and the actual Taxes due as set forth
2  on the tax returns (and 50% of preparation expenses), within forty-five (45)
3  days of the filing of the tax returns.  Within forty-five (45) days of the filing
4  of the Trust's tax returns, Thomas will provide Jack with copies of the
5  Trust's tax returns and all invoices reflecting accounting, legal and tax
6  preparation expenses incurred in the preparation of said tax returns;

     f.    To the extent that the California Franchise Tax Board refunds any portion of the funds held at the close of escrow for the Julian Property ($21,645.00), Thomas shall pay to Jack fifty percent (50%) of any refund within five (5) business days of receipt of said funds, with documentation of said refund to be sent to counsel for Jack contemporaneously with the payment …

(Doc. No. 39-2 at 8.)

On June 2, 2016, Defendant sent Plaintiff an accounting calculating Plaintiff's share of the taxes:

**Total Taxes:**

| | |
|---|---|
| Federal | $46,504.00 |
| State of California | $15,929.00 |
| Return Preparation | $2,400.00 |
| | ------------ |
| Taxes | <u>$64,833.00</u> |
| | |
| Jacks 1/2 share | $32,416.50 |
| Reserved funds | $30,000.00 |
| | |
| Jack Proportional Share | $0 |

(Doc. No. 39-1 at 7.)

///

3

3:15-cv-01578-H-KSC

Upon receipt of this accounting, Plaintiff's lawyer emailed Defendant's lawyer saying "Your client's math is off.  The correct accounting should be as follows:

| | | |
|---|---|---|
| Federal: | $46,504.00 | |
| State: | ($5,716) | |
| Return Preparation: | $2,400 | |
| Taxes: | $43,188.00 | |
| | | |
| Jack's ½ share: | $21,594.00 | |
| Reserved funds: | $30,000.00 | |
| Jack's share: | $8,406.00 | |

(Doc. No. 39-1 at 15.)

Subsequently Defendant's lawyer provided a slightly different accounting:

| | | |
|---|---|---|
| | $46,277 | Federal Taxes (paid 4/15/16) |
| | $277 | 5/18/16 IRS Supp Notice |
| | $21,645 | California FTB |
| | $2,400 | Tax preparation (Agent Wealth Mgmt.) |
| Total: | $70,588 | |
| Less | $5,716 | |
| Total taxes: | $64,833 | |
| Jack's share: | $32,441.50 | |

(Doc. No. 39-1 at 17.)

The parties were unable to settle their disagreements and, on August 26, 2016, filed a joint motion to enforce their settlement.  (Doc. No. 39.)

///
///
///
///
///

**DISCUSSION**

I. **LEGAL STANDARD**

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987). The only requirements are that (1) the agreement be complete, id., and (2) both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute, Harrop v. Western Airlines, Inc., 550 F.2d 1143, 1144-45 (9th Cir. 1977). If these requirements are met, the Court will interpret the agreement pursuant to "familiar principles of contract law." Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989). In California, "[a] contract must be interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. This intent, however, is objective—"the intent manifested in the agreement and by surrounding conduct"—and not controlled by the "subjective beliefs of the parties." United Commercial Ins. Serv. Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992). If the contract language is "clear and explicit" then the "language of the contract is to govern." Cal. Civ. Code § 1638.

II. **ANALYSIS**

The parties do not dispute they entered into a complete, legally enforceable Settlement Agreement on January 25, 2016. (Doc. No. 39-2 at 7-12.) Thus the only issue for the Court is to ascertain the "mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636.

The Settlement Agreement language is "clear and explicit" as to Plaintiff's tax liability. Cal. Civ. Code § 1638. Defendant would withhold $30,000 of Plaintiff's proceeds from the settlement. (Doc. No. 39-2 at 8, § 1(d).) These reserved funds would be used to cover "[Plaintiff's] fifty percent (50%) share of any federal, county or state taxes associated with the sale of the Julian Property, including Jack's 50% proportional share of all costs for the preparation of [taxes]." (Id.) If Plaintiff's fifty-percent share

was less than $30,000, the amount withheld, then "[Defendant] shall pay to [Plaintiff] the difference between the Reserved Funds and the actual Taxes due." (Id. at 8, § 1(e).)

Plaintiff's fifty-percent share includes "any federal, county or state taxes associated with the sale of the Julian Property." (Id. at 8, § 1(d).) The total taxes associated with the sale of the Julian Property were $64,883,[1] so Plaintiff's corresponding amount is $32,441.50. As this amount is greater than $30,000, Plaintiff is not due anything under Section 1(e) of the Settlement Agreement.

Plaintiff argues that this straightforward interpretation of the Settlement Agreement should be upended because it would render Section 1(f) meaningless. (Doc. No. 42 at 4.) This is not so. Section 1(f) states that "[t]o the extent that the California Franchise Tax Board refunds any portion of the funds held at the close of escrow for the Julian Property ($21,645.00), [Defendant] shall pay to [Plaintiff] fifty percent (50%) of any refund within five (5) business days of receipt of said funds." (Doc. No. 39-2 at 8, § 1(f).) Plaintiff argues this refund is independent of the potential refund in Section 1(e) and the phrase "shall pay" should be read strictly to mean that Plaintiff is owed fifty-percent of that refund, regardless of his total tax liability. (Doc. No. 42 at 4.) But Plaintiff's reading fails to consider the Agreement as a whole. See Lemm v. Stillwater Land & Cattle Co., 217 Cal. 474, 480 (1933) ("A Court must look at the contract as a whole and give to each particular clause thereof the modification or limitation or qualification which it is evident from the other parts of the contract the parties intended."). Viewed in light of the entire agreement, Section 1(f) is better read as controlling the timing of Plaintiff's possible refund. This reading does not render the provision meaningless and preserves the intended fifty-fifty sharing of the tax burden.

Section 1(f) is not meaningless as it serves to control the timing of any additional refund Plaintiff would receive on account of having overpaid the California Franchise

---

[1] Federal taxes totaled $46,277 (paid on April 15, 2016) plus $277 (paid on May 18, 2016). California taxes totaled $15,929, resulting from the original $21,645 (paid on January 8, 2015), minus the expected refund of $5,716.

Tax Board taxes. Section 1(e) provides for timing of Plaintiff's initial refund: "[Defendant] shall pay to [Plaintiff] . . . within forty-five (45) days of the filing of the tax returns." (Doc. No. 39-2 at 8, § 1(e).) However, this clause fails to account for the possibility that Plaintiff's liability could be adjusted after this initial refund. Plaintiff was aware of this possibility because his accountant told him the California Franchise Tax withholding had likely been too high. (Doc. No. 39-2 at 3.) If some of this tax money was later refunded, then Plaintiff's fifty-percent portion should be adjusted, resulting in the possibility of an additional refund. And, given this possibility of an additional refund, it is understandable that the parties would include an additional clause specifying the timing of that later refund. That is what happened here; Section 1(f) ensures that Plaintiff would receive any additional refund within 5 days.

Plaintiff acknowledges the Settlement Agreement was intended to distribute the tax burden evenly amount the parties. (Doc. No. 42 at 2.) Reading Section 1(f) as a timing clause is necessary to preserving that balance. As noted previously, the total taxes associated with the sale of the Julian Property were $64,883. If Plaintiff's reading of Section 1(f) were to be adopted, he would pay substantially less than half that amount. Under his proposed construction, Plaintiff would contribute $30,000 towards taxes pursuant to Section 1(e) with no refund.[2] Then, under Section 1(f) Plaintiff would receive a refund of approximately $2,850. So at the end of the day, Plaintiff would contribute only $27,150 to the total tax liability of $64,883—which is substantially less than fifty-percent. Because this is at odds with a literal reading of Sections 1(d) and 1(e), as well as the parties' manifest intent, the Court rejects Plaintiff's interpretation. The better reading of Section 1(f) is that it regulates the timing of certain refunds, subject to

---

[2] The Court notes that this is already less than half of the total tax liability. However, the Settlement Agreement does not provide for a situation in which Plaintiff's liability is greater than the $30,000 withheld from Plaintiff's share of the sale proceeds. As such, the Court finds the parties' manifest intent at the time of contracting was to limit Plaintiff's liability to $30,000.

the substantive calculations under Sections 1(d) and 1(e).[3] To the extent that plaintiff subjectively intended to avoid part of his tax liability by inserting Section 1(f), this does not override the objective intent manifested in the Agreement.  United Commercial Ins. Serv., Inc., 962 F.2d at 856 ("The relevant intent is 'objective'—that is, the intent manifested in the agreement and by surrounding conduct—rather than the subjective belief of the parties.").

      Plaintiff argues that he would bear fifty-percent of the tax liability under his reading of the agreement because he effectively contributed fifty-percent of the California Franchise Tax at the time it was originally withheld from the sale of the property.  (Doc. No. 42 at 2-3.)  Although Plaintiff could have made this argument during settlement negotiations, nothing to that effect was ultimately memorialized.  Plaintiff could not have actually contributed to the California Franchise Tax at the time of the sale because he did not have possession of the property or the proceeds from the sale—that is why he sued.  And had the settlement negotiations granted him some credit for the tax withholding, it should have been memorialized in the Settlement Agreement.  Instead, the Agreement gave Plaintiff a sum of money, minus his tax liability of a "fifty percent (50%) share of any federal, county or state taxes associated with the sale of the Julian Property."  This language is clear and explicit and the Court is unwilling to read in any exceptions.

///
///
///

---

[3] The Court acknowledges that there is nothing in the Settlement Agreement expressly making a Section 1(f) refund conditional on Plaintiff's fifty-percent share of the tax liability being less than $30,000.  However, this implicit conditionality is supported by the fact that at the time of entering into the Settlement Agreement, both parties believed that $30,000 was more than enough to cover Plaintiff's share—indeed, if they had not assumed as much they would have withheld more.  And if the $30,000 was enough to cover Plaintiff's share, then Plaintiff would necessarily receive a refund under Section 1(f).  Thus the implicit conditionality flows directly from the Settlement Agreement's underlying assumption.

## **CONCLUSION**

For the foregoing reasons, the Court adopts the magistrate judge's Report and Recommendation in favor of the Defendant and denies Plaintiff's motion to enforce the settlement. As recommended by the magistrate judge, to the extent Defendant has not yet paid to Plaintiff the $235,000 from the sale of the Julian Property pursuant to the terms of their settlement, Defendant is ordered to do so within 30 days.

**IT IS SO ORDERED.**

DATED: November 1, 2016

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT